[Cite as *State v. West*, 2015-Ohio-442.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26355 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 2014-CR-614 |
| v. | : | |
| | : | (Criminal Appeal from |
| LINDSEY B. WEST | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 6th day of February, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellant

ALYSIA A. GOSS, Atty. Reg. No. 0086398, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Plaintiff-appellant the State of Ohio appeals from an order suppressing evidence. We conclude that the traffic stop for speeding was justified based on the police officer's pacing of the suspect's automobile, using the officer's own speedometer to

determine that the suspect was well above the speed limit. Although the stop took longer than the typical traffic stop, the officer's observations upon stopping the car gave rise to a reasonable, articulable suspicion of illegal drug activity, which justified resort to a drug-sniffing dog, and the stop was not unreasonably prolonged for that purpose. The trial court therefore erred in suppressing the evidence. Accordingly, the order of suppression is Reversed, and this cause is Remanded for further proceedings.

## I. The Stop

{¶ 2} On November 15, 2013, State Trooper Kyle Pohlable was on routine patrol in Dayton. While driving northbound on James H. McGee Boulevard, Pohlable observed a vehicle driving southbound. He noted that the two occupants of the vehicle caught his eye and immediately looked away. Pohlable decided that this reaction was suspicious, so he turned around and began to follow the car. When the car turned onto McCall Avenue, Pohlable visually estimated it to be travelling approximately 40 miles per hour in a 30-mph zone. He then set his cruiser speedometer at 40 miles per hour and followed the car for a quarter of a mile, while watching to determine whether the car maintained its speed. Using this method he measured the speed at 40 miles per hour up to 41 miles per hour.

{¶ 3} At 11:02 a.m., Pohlabel stopped the car, approached the driver's side of the car, and obtained the driver's license, registration and insurance. He noticed that the passenger, later identified as West, "could barely keep her head up," and that she had red eyes with "restricted pupils." Tr. p. 20. West's speech was slurred and her hands were shaking so much that she was unable to light a cigar she had. Pohlabel did not smell any

alcohol.  Given that the women had been first spotted in a high crime/high drug area, and based upon his training, he determined that she was "highly intoxicated" on some type of a "narcotic analgesic." *Id.*

{¶ 4}  Intending to write a ticket for speeding, Pohlable returned to his cruiser to verify the driver's information. However, his computer was backed up with 300 messages, so there was a delay in verifying the information. Due to his suspicion that there was drug activity, he called for backup.   While waiting on the computer, Pohlable asked the driver where she had been and where she was going, to which she replied that West had been to see her probation officer at the courthouse, and they were attempting to get onto U.S. 35.   Pohlable noted that the women would have had to miss several places to get onto U.S. 35 in order to get from the courthouse to where he initially spotted them.   The driver indicated that the car belonged to West.   The car license indicated that the car was from Clinton County.   Pohlable testified that, based upon his training and experience, he knows that drug users from Clinton County often come to Dayton to purchase drugs.   He also stated that the area in which he first spotted the car was known as a high crime/drug area.

{¶ 5} Within "four to five minutes," another trooper arrived on the scene.   At 11:15 a.m., Pohlable requested a canine unit, which arrived at 11:30 a.m.   Pohlable had not completed the citation at that point, due to the problem with the computer.   The canine had a positive reaction, and contraband narcotics were found in West's possession.

## II. The Course of Proceedings

{¶ 6} West was indicted on one count of Possession of Heroin (less than one

gram). She moved to suppress evidence, arguing that because Pohlable's traffic stop for speeding was based upon an unaided visual estimation of speed, he did not have reasonable articulable suspicion for initiating the stop. She further argued that Pohlable improperly expanded the scope of the stop.

{¶ 7} The trial court sustained the motion to suppress, finding that Pohlable used an unaided visual estimation of speed in deciding to initiate the traffic stop. The trial court further stated that there was insufficient evidence and authority to support the reliability of pacing. The court stated that "due to the dearth of guidance from the Second Appellate District, this Court is hesitant to opine about the accuracy or dependability of this method of determining speed." The trial court went on to state that because Pohlable "violated Ms. West's rights when he stopped the vehicle she was in, the Court further finds that the length of time that she was detained by the police was also unreasonable."

{¶ 8} The State appeals from the suppression order.

### III. Officer Pohlable Had a Reasonable, Articulable
### Suspicion that the Driver of the Car Was Speeding

{¶ 9} The State's First Assignment of Error states:

THE TRIAL COURT ERRED IN FINDING THAT TROOPER POHLABLE VIOLATED WEST'S FOURTH AMENDMENT RIGHTS BY STOPPING THE VEHICLE IN WHICH SHE WAS A PASSENGER FOR VIOLATING R.C. 4511.21(d), WHEN HE HAD MEASURED THE SPEED OF THE VEHICLE BY PACING IT.

**{¶ 10}** The State contends that the trial court erred by determining that Pohlable made an unaided visual estimation of speed, and by holding that "pacing" is not an acceptable method of determining speed when deciding whether to initiate a traffic stop.

**{¶ 11}** The trial court stated that its decision was based upon its interpretation of R.C. 4511.091(C)(1). That statute states, in part:

No person shall be arrested, charged, or convicted of a violation of any provision of divisions (B) to (O) of section 4511.21 or section 4511.211 of the Revised Code or a substantially similar municipal ordinance based on a peace officer's unaided visual estimation of the speed of a motor vehicle, trackless trolley, or streetcar. This division does not do any of the following:

(a) Preclude the use by a peace officer of a stopwatch, radar, laser, or other electrical, mechanical, or digital device to determine the speed of a motor vehicle[.]

**{¶ 12}** The trial court found that the trooper made an unaided visual estimation of speed, that there was insufficient evidence regarding the reliability of this method, and that there is no authority for accepting pacing as a method of determining speed. We disagree.

**{¶ 13}** We conclude that a cruiser speedometer qualifies as an "electric, mechanical or digital device to determine the speed of a motor vehicle." Thus, while Pohlable did make an initial unaided visual estimate that the car was speeding, he then used his speedometer to pace the vehicle in order to determine its speed. Furthermore,

notwithstanding the trial court's statement to the contrary, this court has upheld the use of pacing as a method of determining speed. *State v. Collins*, 2d Dist. Clark No. 2002 CA 51, 2002-Ohio-6858, ¶ 14. Other appellate districts have also upheld this method. *See*, *e.g.*, *City of Cleveland v. Bates*, 8th Dist. Cuyahoga No. 90212, 2008-Ohio-3679; *State v. Horn*, 7th Dist. Belmont No. 04 BE 31, 2005-Ohio-3679. We also stated that issues of training and speedometer accuracy involve the weight of the evidence rather than its competency. *Collins*, at ¶ 14.

{¶ 14} We conclude that the trial court erred in finding that the State failed to establish the speed of the vehicle, and thus erred in finding that there was no reasonable, articulable reason for the traffic stop. Accordingly, the First Assignment of Error is sustained.

## IV. Officer Pohlable Had a Reasonable, Articulable Suspicion of Illegal Drug Activity, Justifying his Calling for a Drug-Sniffing Dog, which Arrived on the Scene within a Reasonable Time

{¶ 15} The State's Second Assignment of Error is as follows:

THE STOP WAS NOT UNNECESSARILY PROLONGED.

{¶ 16} The State contends that the trial court erred in finding that West was detained for an unreasonable amount of time after the vehicle was stopped.

{¶ 17} "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. * * * 'In determining if an officer completed these

tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.' " *State v. Aguirre*, 4th Dist. Gallia No. 03CA5, 2003-Ohio-4909, at ¶ 36, quoting *State v. Carlson*, 102 Ohio App.3d 585, 598–599, 657 N.E.2d 591 (9th Dist. 1995).

{¶ 18} In this case, Pohlable made the initial stop at 11:02. He testified that the computer in his cruiser was backed up, which slowed his ability to check the information provided by the driver. While he was waiting on the information from dispatch, he began to notice more evidence that led him to develop a reasonable suspicion of criminal drug activity. He called for backup and a canine unit. He testified that the stop took a while longer than most stops, but he testified that this was merely because of the delay in the computer. The canine unit arrived at 11:30, prior to the completion of the ticket.

{¶ 19} Based upon these facts, we conclude that even if the stop was longer than the typical traffic stop, Pohlable had a reasonable, articulable suspicion that criminal activity was occurring that justified use of a drug-sniffing dog, and that the dog was brought to the scene without unreasonable delay. Therefore, we conclude that the trial court erred in finding that the stop was unreasonably prolonged.

{¶ 20} The Second Assignment of Error is sustained.

## V. CONCLUSION

{¶ 21} Both of the State's assignments of error having been sustained, the trial court's granting of West's motion to suppress is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J., and WELBAUM, J., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
Alysia A. Goss
Hon. Richard S. Skelton